**In re Catherine DOUD, d/b/a Inn at the 3 Flags and the Stew Pot, Debtor.**

**UNITED MUTUAL SAVINGS BANK, Plaintiff,**

v.

**Catherine DOUD, Defendant.**

**Bankruptcy No. 83–00021T. Adv. No. A83–0069.**

United States Bankruptcy Court, W.D. Washington.

June 16, 1983.

Noel P. Shillito, Tacoma, Wash., for debtor/defendant.

John E. Sloan, Parker Cann, Tacoma, Wash., for United Mut. Sav. Bank.

David J. Manger, Tacoma, Wash., for Union Bank.

## DECISION ON MOTION TO DETERMINE EFFECT OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY

ROBERT W. SKIDMORE, District Judge.

This matter came on regularly for hearing upon the joint motion of Union Bank and the debtor for a determination of the effect of the Order Granting Relief from Automatic Stay entered February 23, 1983. Parker Cann and John E. Sloan appeared on behalf of plaintiff, United Mutual Savings Bank, David J. Manger appeared on behalf of Union Bank, and Noel P. Shillito appeared on behalf of the debtor.

The facts involved are not in dispute. Debtor, Catherine Doud filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 6, 1983. The debtor had an interest in real property located in Pierce County subject to a first Deed of Trust in favor of United Mutual Savings Bank and a second and third mortgage in favor of Union Bank. A non-judicial foreclosure sale on said property under Mutual Savings Bank's Deed of Trust was scheduled for Friday, January 7, 1983 at 10:00 a.m. Said sale was continued by the trustee "from time to time" pursuant to R.C.W. 61.24.040(6).

Plaintiff United Mutual Savings Bank filed the above entitled action for relief from automatic stay on January 27, 1983. Paragraph 2 of plaintiff's prayer for relief requested "[t]hat the order for relief from stay be granted nunc pro tunc, effective from the date Catherine Doud filed her Chapter 7 petition herein, January 6, 1983." A preliminary hearing was held February 22, 1983 which was not attended by the debtor or debtor's counsel. Plaintiff secured entry of an order for relief from say by default on February 23, 1983. The last paragraph of said order states: "... this order from [sic] relief from stay is effective nunc pro tunc as of January 6, 1983, the date the debtor filed her Chapter 7 petition herein." Subsequently plaintiff's non-judicial foreclosure sale was held on February 25, 1983.

The trustee in the debtor's case, Karen Wood, was not joined as a party. However, the trustee did sign a stipulation agreeing to a relief from stay as to the subject property, which was filed with the court March 30, 1983.

The moving parties have raised three objections to the procedure utilized by plaintiff in obtaining its order for relief from automatic stay and conducting its non-judicial foreclosure sale: (1) the continuance of the sale amounted to a violation of the automatic stay, and as such is void; (2) the Chapter 7 trustee is an indispensable party who should have been joined; and (3) the plaintiff's order granting relief from automatic stay nunc pro tunc effective to the date the petition was filed is a misuse of the court's power to issue nunc pro tunc orders.

 The record reflects that Union Bank has not moved to intervene in the above entitled case pursuant to F.R.C.P. 24. As such, the court finds that Union Bank does not have standing to seek a determination of the effect of the court's order granting relief from stay. Since the relief requested was granted by default, the court finds that the debtor may seek such a determination.

## I. AUTOMATIC STAY–CONTINUANCE OF SALE

11 U.S.C. § 362(a) sets forth the basic statutory grant for the automatic stay.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

 The protection provided the debtor by the automatic stay is very fundamental—to grant the debtor immediate relief.

From the provisions of Section 362, which the court has emphasized, it is clear that the automatic stay prohibits the continuation of any judicial action against a debtor and prohibits any act to collect any debt which arose prior to the bankruptcy. The legislative history of Section 362 reveals that Congress intended this section to be one of the fundamental debtor protections provided by the bankruptcy laws, and that it was intended to stop all collection efforts, all harassment, and all foreclosure actions. . . . *Matter of Dennis,* 17 B.R. 558, 560 ( [Bkrtcy.] 1982).

Therefore, the protection set forth in § 362 was intended to be broad to provide the debtor with complete relief.

Section 362(a) is drafted as a series of paragraphs which are to some extent repetitive but are, in fact, carefully drafted to be as inclusive as possible. Changes in status of the debtor or his assets may result in a cessation of the applicability of one paragraph but with another coming into effect. Paragraph (6) of section 362(a) is very general and applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." This paragraph will apparently preclude any effort to realize upon a prepetition claim." *Collier Bankruptcy Practice Guide,* § 38.02[2], p. 38–9.

The issue presented is whether plaintiff's continuance of the non-judicial foreclosure

sale amounted to a violation of the stay imposed by 11 U.S.C. § 362(a)(3), (4) or (5). Plaintiff has cited the only apparent authority on point, *Matter of Roach*, 660 F.2d 1316 (1981), where the Ninth Circuit Court of Appeals held that the publication of notices of postponement of a non-judicial foreclosure sale did not amount to a violation of the automatic stay. The court stated the reasoning for its decision as follows:

> The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. Notes of Committee on the Judiciary, Sen.Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in [1978] U.S.Code Cong. & Ad. News 5787, 5840. The automatic stay also prevents piecemeal diminution of the debtor's estate. See *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1167 (2d Cir. 1979). The automatic stay does not necessarily prevent all activity outside the bankruptcy forum. *See David v. Hooker, Ltd.*, 560 F.2d 412, 417–18 (9th Cir.1977) (automatic stay under old bankruptcy act did not prevent trial judge in a separate case from requiring the debtor to comply with a discovery order issued prior to the filing of the insolvency petition).
>
> Here, the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision. *See In re Decker*, 465 F.2d 294, 297 (3d Cir.1972) (stay provisions of old act were designed to maintain status quo). *Matter of Roach, supra,* pp 1318–19.

The plaintiff continued the sale in the manner prescribed by the Deed of Trust statute.

> The trustee may for any cause he deems advantageous continue the sale for a period or periods not exceeding a total of one hundred twenty days by a public proclamation at the time and place fixed in the notice of sale. No other notice of the postponed sale need be given. R.C.W. 61.24.040(6).

The court can see no distinction between postponement by publication and announcement of continuance in the manner prescribed by statute. The reasoning stated in *Matter of Roach, supra,* that a mere postponement of sale is not in and of itself adversarial and does not disrupt the status quo—is equally applicable in the instant case. Therefore, the court finds that the plaintiff's action did not violate the provisions of § 362(a).

## II. TRUSTEE AS INDISPENSABLE PARTY

■ The debtor properly asserts that the Chapter 7 trustee is an indispensable party to an adversary proceeding for Relief from Automatic Stay. *In Re Tursi*, 9 B.R. 450 (Bkrtcy.1981); *In Re DiBona*, 7 B.R. 798 (Bkrtcy.1980). It has been recognized that the appropriate remedy for the creditor's failure to join the trustee is a continuance. *In Re Klima*, 27 B.R. 917 (Bkrtcy.1983). However, where the trustee has stipulated to relief from stay, as in the instant case, the actual joinder of the trustee is an unnecessary step.

## III. ENTRY OF ORDER FOR RELIEF FROM STAY NUNC PRO TUNC

■ The debtor has questioned the appropriateness of an order granting relief from automatic stay nunc pro tunc to the date of the filing of the debtor's petition for relief. This challenge would appear to be well founded. The nature of a nunc pro tunc order is clearly stated in the leading case of *Mitchell v. Overman*, 103 U.S. 62, 26 L.Ed. 369.

> The adjudged cases are very numerous in which have been considered the circumstances under which courts may properly enter a judgment or decree as of a date anterior to that on which it was in fact rendered.... We content ourselves with saying that the rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity

or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should be might have been entered up. In such cases, upon the maxim *actus curiae neminem gravabit,*—which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice,—it is the duty of the court to see that the parties shall not suffer by the delay. *A nunc pro tunc order should be granted or refused, as justice may require in view of the circumstances of the particular case. Mitchell v. Overman, supra,* p. 62–64 [as cited in 6A *Moore's Federal Practice,* ¶ 58.08, p. 58–301 (2nd ed 1982)]. (emphasis added).

The court's ability to enter orders and judgments nunc pro tunc has been recognized in Washington both under the auspices of statutory grant, R.C.W. 26.09.0290, and under the court's inherent equitable powers. *Marriage of Pratt,* 32 Wash.App. 665, 649 P.2d 141 (1982); *Bruce v. Bruce,* 48 Wash.2d 635, 296 P.2d 310 (1956); *Garrett v. Byerly,* 155 Wash. 351, 284 P. 343 (1930).

However, the underlying purpose for the entry of a nunc pro tunc order is to clarify the court records to adequately reflect action taken by the court at a previous time. This is illustrated in the bankruptcy court's denial of the debtor's request for a nunc pro tunc order to extend its exclusive period within which to file a plan under 11 U.S.C. § 1121(c)(2) (after said time had elapsed) in *In Re Ravenna Industries, Inc.,* 20 B.R. 886 (Bkrtcy.1982).

It has been stated that "the function of an order nunc pro tunc is to record an order actually made, which, through some oversight or inadvertence, was never entered on the records of the court, or which was incorrectly entered." 56 Am Jur 2d *Motions, Rules and Orders* Section 44 (1971). Here, the order sought is not one to record an order made, but never recorded, or one which was incorrectly entered. Debtor seeks to have an order entered, untimely, as if it had been entered timely. Orders nunc pro tunc are not available for that purpose. *In Re Ravenna Industries, Inc., supra,* p. 890.

The court's inherent power to enter orders nunc pro tunc does not give the court authority to enter orders with blanket retroactive effect as requested by the plaintiff. The plaintiff's application for nunc pro tunc order for relief from stay to be effective on the date of the filing of the debtor's petition is particularly eggregious, since its true impact is to emasculate the debtor's protection of the automatic stay and thereby impair his or her "fresh start."

The legislative history with respect to the automatic stay appropriately notes that it is one of the fundamental debtor protections provided by the bankruptcy laws. This stay gives the debtor a breathing spell from his creditors and stops all collection efforts, all harassment and all foreclosure actions [H.R.Rep. No. 95–595, 95th Cong., 1st Sess 340–42 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 49–51 (1978)]. A debtor who seeks a fresh start is afforded a rehabilitation opportunity free from the immediate financial pressures and problems which caused the debtor to seek relief under the Code.... 1 *Norton Bankruptcy Law & Practice* § 20.04, Part 20–pages 6–7 (1981).

Therefore, it is

ORDERED, ADJUDGED AND DECREED that the plaintiff's continuance of the non-judicial foreclosure sale is not in violation of 11 U.S.C. § 362(a), and it is further

ORDERED that due to her stipulation to relief from stay, the trustee need not be joined as an indispensable party, and it is further

ORDERED that this court's order of February 23, 1983 granting relief from automatic stay is hereby vacated to the extent that it grants said relief nunc pro tunc, and said order shall be given prospective effect only, from its date of entry.