In re Delores C. BROWN, Debtor.

Delores C. BROWN, Plaintiff,

v.

**PENNSYLVANIA STATE EMPLOYEES CREDIT UNION, Defendant.**

Bankruptcy No. 1–84–00329.
Adv. No. 1–84–0098.

United States Bankruptcy Court,
M.D. Pennsylvania.

May 30, 1985.

Anthony Disanto, Harrisburg, Pa., for plaintiff.

James Turner, Turner & O'Connell, Harrisburg, Pa., for defendant.

**MEMORANDUM**

ROBERT J. WOODSIDE, Bankruptcy Judge.

On May 1, 1984, the plaintiff filed a Petition for Relief under Chapter 7 of the

Bankruptcy Code. On May 3, 1984 the plaintiff's attorney sent a letter to Pennsylvania State Employees Credit Union (PSECU) who was listed on plaintiff's schedules as a creditor. The full text of the letter is as follows:

Enclosed is a copy of the Bankruptcy Chapter 7 Petition filed by Delores C. Brown with the Middle District Bankruptcy Court in Harrisburg, Pennsylvania on May 1, 1984. Accordingly, all collection efforts against Ms. Brown should cease immediately.

Questions should be referred directly to this office.

Sincerely,

Anthony DiSanto

On June 5, 1984 the delinquency division of PSECU wrote directly to plaintiff. The full text of that letter is as follows:

We recently received notice that you have filed a bankruptcy petition in which you list certain obligations to Pennsylvania State Employees Credit Union. In connection with the bankruptcy, you should be aware of the following policies of the Credit Union:

1. Payroll Deductions—The Credit Union does not have power to stop your payroll deduction. If you do not intend to honor your obligation to the Credit Union, you must file a payroll deduction change form with your personnel office. This form may be obtained from your personnel office or from PSECU.

2. Personal Service Loans—If you do not reaffirm your loan, but continue paying, no advances to your loan will be permitted. If you reaffirm your loan, your credit standing with PSECU will be unimparied. In any event, you will not be allowed to make any advances on your loan unless and until a reaffirmation is approved.

3. Automobile Loans—If you wish to keep the car you pledged for the loan, you must reaffirm the debt. This is arranged between your attorney and the attorney for the Credit Union.

4. Shares on Deposit—Any shares in the Credit Union, as of the date your petition was filed, are pledged as security for your loan pursuant to Pennsylvania law, 15 P.S. Sec. 12315. These shares are unavailable until you either reaffirm your loan or are granted a discharge. In the latter event the shares are applied to your loan balance.

5. Future Services—It is the Credit Union's policy to deny future services to members when any portion of the debt is discharged in bankruptcy. However, if the obligation is reaffirmed with court approval, you would remain eligible for services as though the bankruptcy had not occurred.

If you desire to reaffirm your obligation, you should immediately contact the Credit Union so that the appropriate papers may be prepared. In the meantime, if you have any questions, please feel free to contact us.

Sincerely,

Delinquency Division

Pennsylvania State Employees Credit Union

The plaintiff's attorney was not copied with this letter.

The plaintiff filed her complaint based on the above facts and requested injunctive relief and declaratory judgment under sections 362 A, 524 and 525 of the Code. In essence the plaintiff is requesting an injunction to preclude PSECU from carrying out its policies as outlined in the letter of June 5, 1984.

A hearing was held and this matter has been briefed and is ready of determination.

The plaintiff advances three arguments:

(1) The correspondence of June 5, 1984 was designed to secure the plaintiff's reaffirmation of a debt and was a violation of the automatic stay found in § 362(b).

(2) The policy of PSECU to deny future services and membership rights violates the permanent injunction provisions of § 524(a)(2).

(3) The policies of PSECU violate the anti-discrimination policies of § 525 of the Code.

The Court shall deal with these arguments in inverse order as presented by plaintiff.

■ Section 525 of the Code provides a debtor with protection from discriminatory treatment by a governmental unit. It only applies however to a governmental unit which is defined in § 101(24) of the Code as follows:

(24) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government;

The testimony clearly establishes that PSECU is not a governmental unit as defined in section 101 and therefore there can be no violation of section 525. PSECU is a credit union. Its connection with the Commonwealth is that the vast majority of its members are Commonwealth employees. Membership however is not limited solely to employees of the Commonwealth. Spouses, parents and children are also eligible for membership. Also employees of PSECU are eligible to belong to the Credit Union.

Plaintiff argues that PSECU has a governmental or quasi governmental status because of the existence of § 5953 of the State Employee's Retirement Code, 71 Pa. C.S. § 5953(a)(1)(ii). This section of the Retirement Code permits a Commonwealth employee to assign up to $750.00 of retirement benefits to a credit union as a security for a loan, provided the credit union's membership is "limited solely to officials and employees of the Commonwealth." As noted previously the membership of PSECU is not limited solely to employees of the Commonwealth. It could thus be argued that this provision is not applicable to PSECU. In any event I do not deem it significant in determining whether PSECU is a "governmental unit" as defined in the Bankruptcy Code.

It is not the membership of an organization that should determine its status as a governmental unit. It is the functions of that organization that should be examined to make the determination. PSECU is regulated by the same laws and regulations that controls all the other credit unions. It performs no different functions than other financial institutions offering identical services. It is not a governmental unit.

Section 524(a)(2) provides:

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. 524(a)(2).

■ Plaintiff argues that the policy of PSECU in not providing future services to those who have a debt owing to PSECU discharged [1] is an attempt to collect a debt in violation of § 524(a)(2). While it is recognized that one of the salutory purposes of the bankruptcy code is to provide an individual debtor with a "fresh start," plaintiff's interpretation of this provision would provide a debtor with rights not contemplated by Congress. This provision does not require a creditor to continue to deal with a debtor. The reason for many of the reaffirmation agreements is to try to continue a credit relationship. This court has approved reaffirmation agreements between a debtor and credit union in the past and suspects those agreements were entered into so that the debtor could continue to avail himself of the services of the credit union. There is nothing in the code which requires the debtor to enter into a reaffirmation agreement. Likewise there is nothing in the code which requires a creditor to continue to deal with a debtor. Debtors often voluntarily pay banks, other financial institutions, and credit unions so that they

---

1. The policy if PSECU is not just for those who have a debt discharged in bankruptcy. It applies to any member who causes PSECU a loss.

can reestablish credit. These organizations cannot be ordered to provide services to a debtor even if their refusal is based on the debtor's decision not to reaffirm the debt owed to the organization. A policy not to have future dealings with a debtor unless he reaffirms a debt does not violate § 524(a)(2).

Plaintiff argues that the letter of June 5, 1984 sent directly to plaintiff is in violation of 11 U.S.C. § 362(a)(6) which provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entitles, of

(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title;

The real objection of plaintiff is to paragraph five of the letter which states that no future services will be provided unless you reaffirm the debt owed to PSECU. Since I have held that the policy itself is not violative of the Code, I do not feel that the imparting of information as to that policy is a violation of § 362(a)(6). If a debtor realizes that Credit Services will continue to be available if the debt is reaffirmed he or she might wish to take that action. Indeed in this case plaintiff did initially decide to reaffirm the PSECU debt.

Nevertheless, I find that PSECU acted improperly in sending this letter directly to the plaintiff. Counsel for plaintiff wrote to PSECU by letter of May 3, 1984 requesting that "Questions should be referred directly to this office." The letter enclosed a copy of the bankruptcy Chapter 7 petition. Under these circumstances PSECU should have communicated with the attorney and not directly with plaintiff.

In addition, although I do not believe PSECU's purpose in contacting the debtor was to attempt improperly to recover its claim, its actions, nevertheless, ran afoul of the strict prohibitions of 11 U.S.C.

§ 362(b). As the House and Senate Reports on the 1978 Code points out:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. *It gives the debtor a breathing spell from his creditors.* It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him to bankruptcy....

Paragraph 6 prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. *Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy.* This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors. (emphasis supplied).

House Report, No. 95-595, 95th Cong., 1st Sess. 340-2 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6296; Senate Report No. 95-989, 95th Cong., 2d Sess. 49-51 (1978).

The legislative history of the act thus evidences a concern that the debtor be granted a breathing spell from his or her creditors and a concern that inexperienced, and easily susceptible debtors be shielded from direct communications by creditors. PSECU's letter advising the debtor that, "[i]f you desire to reaffirm your obligation, you should immediately contact the Credit Union so that the appropriate papers may be prepared" cannot be reconciled with the intended effect of the automatic stay provision.

Because PSECU's action constituted only a technical and clearly unintended violation of § 362(a)(6), the imposition of costs or pecuniary penalties against the credit union is not warranted. In the future, however, PSECU should determine the name and address of the attorney representing the

debtor and direct communications concerning the debtor to that attorney.

An appropriate order will be entered.