**In re Mark Albert SCHMIDT and Teresa Gail Schmidt, Debtors.**

**Mark Albert SCHMIDT and Teresa Gail Schmidt, Plaintiffs,**

v.

**AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, Defendant.**

**Bankruptcy No. IP85–3800 S. Adv. No. 86–0072.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Aug. 6, 1986.

Nancy J. Gargula, Indianapolis, Ind., for American Fletcher Nat. Bank.

William L. Price, Indianapolis, Ind., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

NICHOLAS W. SUFANA, Bankruptcy Judge.

Mark Albert Schmidt and Teresa Gail Schmidt ("the Schmidts") filed their "Motion for Contempt Citation" as an adversary proceeding on January 21, 1986. American Fletcher National Bank and Trust Company ("AFNB") filed its Motion to Dismiss on February 28, 1986.

The Motion to Dismiss came before this Court for hearing on July 1, 1986. Teresa Gail Schmidt appeared in person and by counsel William Lawrence Price. AFNB appeared by counsel Nancy J. Gargula. At the close of the hearing, the Court requested proposed findings of fact and conclusions of law. The parties have since complied with that request. And the Court, having reviewed the record and considered the arguments of counsel, now enters the following findings of fact:

### Findings of Fact

1. The Schmidts filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 30, 1985.

2. The schedules filed by the Schmidts listed two debts owed AFNB, one for $4372.00 secured by a 1978 Chevrolet Econo-Line Van and the other for $960.00 unsecured. On their statement of intentions, the Schmidts indicated that they wished to reaffirm the secured debt.

3. At the first meeting of creditors held on October 28, 1985, the interim trustee issued a report of no distribution which was approved by the Court.

4. Immediately following the first meeting of creditors, the Schmidts, their attorney William Price, and a representative of AFNB conferred in the hall outside the meeting room. The AFNB representative stated that AFNB would not reaffirm the secured debt unless the Schmidts also reaffirmed the unsecured debt.

5. Later on October 28, 1985, the Schmidts' attorney phoned the AFNB representative and stated that the Schmidts did not wish to reaffirm either debt and that AFNB could repossess its collateral.

6. AFNB in fact repossessed the collateral immediately thereafter. However,

AFNB took no other steps to collect the debt from the Schmidts or their property.

7. The Schmidts allege that AFNB's refusal to reaffirm the secured debt without reaffirmation of the unsecured debt constituted an act of collection in violation of the automatic stay imposed by 11 U.S.C. § 362(a)(6). AFNB moved to dismiss, on the grounds that the Schmidts' action failed to state a claim upon which relief can be granted.

Whereupon, the Court now makes the following conclusions of law:

1. This Court has jurisdiction over the parties to this adversary proceeding. This Court has jurisdiction over the Schmidts' bankruptcy case pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the General Order of Referral from the United States District Court for the Southern District of Indiana dated July 11, 1984. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Under Federal Rule of Civil Procedure 12(b)(6), applicable here pursuant to Bankruptcy Rule 7012, if when reviewing a 12(b)(6) motion the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment brought pursuant to Federal Rule of Civil Procedure 56 and Bankruptcy Rule 7056. Here the Court has considered affidavits submitted by both sides, and will treat AFNB's motion as one requesting summary judgment. To succeed, AFNB must establish that there is no genuine issue as to any material fact and that AFNB is entitled to judgment as a matter of law. The parties agree that there is no genuine issue of material fact, and thus the Court must determine as a matter of law who is entitled to judgment.

3. Section 362(a)(6) of the Code prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."

4. The Schmidts contend that AFNB's attempt to yoke the secured claim with the unsecured claim and obtain reaffirmation of both was a violation of Section 362(a)(6).

In support of their contention, they cite *In re Green*, 15 B.R. 75 (Bankr.S.D.Ohio 1981). The judge in that case stated that the automatic stay is violated when the creditor withholds approval of a reaffirmation agreement because the debtor chose not to reaffirm an unsecured debt.

5. The Schmidts also cite *In re Olson*, 38 B.R. 515 (Bankr.N.D.Iowa 1984). There, a medical clinic sent a letter to the debtor immediately after receiving notice of the filing and in that letter stated that no future services would be provided the debtor or the debtor's family unless the listed debt were first paid in full. When the debtor appeared at the clinic seeking services and offered to pay cash for those services, the clinic staff refused. The bankruptcy court found that the stay had been violated.

6. Both of these cases are distinguishable from the facts before this Court. In *Green*, the credit union which insisted on the reaffirmation of both debts had repossessed the debtor's automobile without her permission and then essentially coerced a reaffirmation of both debts. In *Olson*, the creditor wrote the debtor without any indication from the debtor that reaffirmation was desired. Here, AFNB did not contact the Schmidts, but only discussed its policies on reaffirmation after contacted by the Schmidts and their attorney. AFNB did not repossess its collateral until after the Schmidts indicated that they would abandon it.

7. The distinction turns on how actively AFNB sought to collect the dischargeable unsecured debt. Here, AFNB did not actively seek to collect the debt, but only engaged in passive efforts to collect after approached by the Schmidts. Such passive efforts do not amount to a violation of the automatic stay.

8. This holding is supported by the basic purposes behind the automatic stay. The automatic stay is designed to benefit the debtor by preventing harassment and allowing the orderly resolution of claims. *Matthews v. Rosene*, 739 F.2d 249 (7th Cir. 1984). Here, AFNB did not harass the

debtor; the creditors in both *Olson* and *Green* did.

9. In one sense, the AFNB representative was merely stating AFNB's policy on reaffirmation. The automatic stay is not violated when a creditor imparts information about the creditor's policies to the debtor. *In re Brown,* 49 B.R. 558 (Bankr. M.D.Pa.1985). The credit union in *Brown* sent a letter informing the debtor that no future services would be available to the debtor unless debts were reaffirmed. While the court ultimately found that the credit union had violated the stay, it held that the letter did not violate the automatic stay simply because it contained information on the credit union's policies.

10. Reaffirmation is a privilege, not a right. Compare Section 524(c) of the Code to Section 722, which gives the debtor the right to redeem property. A reaffirmation requires the voluntary consent of both parties. *In re Whatley,* 16 B.R. 394, 5 C.B.C.2d 1257 (Bankr.N.D.Ohio 1982). Where a creditor refuses to consent to the reaffirmation of one debt without the reaffirmation of another, without more, no violation of the automatic stay has occurred.

### Order

Based upon the foregoing, it is ORDERED, ADJUDGED, AND DECREED that AFNB is entitled to judgment as a matter of law, and AFNB's motion for summary judgment is GRANTED.